Gary G. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
188 W. Northern Lights Blvd., Suite 700
Anchorage, Alaska 99503
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

*Counsel for Defendant Michael Vernon Ross*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    vs.<br><br>MICHAEL VERNON ROSS,<br><br>            Defendant. | Case No. 3:22-cr-00092-SLG-KFR<br><br>**DEFENDANT'S SENTENCE MEMORANDUM** |

Defendant Michael Vernon Ross, through counsel, Gary G. Colbath, Assistant Federal Defender, files this sentence memorandum in support of his request for a **300-month sentence**, followed by **300 months of supervised release**.

## I.    INTRODUCTION

Michael Ross urges this Court for a sentence below the guideline range set forth in the Presentence Investigation Report (PSR).[1]   A sentence of 300 months (25 years), followed by another 25 years of supervised release with the conditions set forth in the PSR is a sentence "sufficient but not greater than necessary" to accomplish the goals of sentencing, and punish Ross for his conduct.

---

[1]  See Docket 52.

Ross' convictions result from his plea of guilty to a single count of Production of Child Pornography in violation of 18 U.S.C. §2251(a) & (e) and a single count of Possession of Child Pornography in violation of 18 U.S.C. §2252(a)(5) with penalty provisions at 18 U.S.C. §2252(b)(2). Thereafter, the court ordered completion of a PSR for sentencing. Probation's final report is found at Docket 52. Based on the conclusions within the report, Probation has recommended a sentence of 360 months custody followed by a 25-year period of supervised release.

## II. FACTS

### A. Nature of the Offense

The relevant facts related to these offenses are set forth in the PSR.

### B. Michael Ross' History and Characteristics

Michael Ross is a 32-year-old single man. The Probation officer's recommendation aptly notes that Michael "has no criminal history or substance abuse history. [He] maintains strong familial support, including frequent contact with his two biological children. He completed an apprenticeship at International Union of Operating Engineers (IUOE) Local 302 and maintained steady employment prior to his incarceration" for this offense. His strong familial support is set forth in part in the letters submitted to the Court.

Michael's friends and family describe him as follows: "Always very patient;" "a great teacher . . . patient, a good listener;" he's "caring and loving;" "creative and ingenious," "fun, good-natured, and . . . still interested in learning new ideas and skills" even while in custody. A former employer describes traits Ross has displayed throughout

his work career, noting he "was a reliable employee, and worked hard, with a good attitude," . . . he's a person who "in addition to thinking on his feet, . . . was always interested in learning new skill, and being the best at his craft." Michael is "diligent, friendly, and very approachable." He's "family oriented and supportive." Despite his physical stature, he's known in his family as "gentle, approachable, kind and encouraging." Indeed, his uncle notes that Michael has always been "accepting of others, selfless, helpful, and never have I seen in him a combative nature." Almost every person who has known Michael, certainly to those who support him to this day and have written to the Court, describe a man with a huge heart, a positive outlook, and a fun loving, caring personality.

The descriptions of Michael and virtually all of his life-long history and characteristics make his offense conduct that much more problematic and unexplainable. Michael certainly offers no excuse or justification for his actions, but instead, can only express sincere and resounding remorse. His history and characteristics should give promise to the Court that Michael should not be defined by his criminal activity alone. He is much more than a now convicted sex offender. He is extremely intelligent which bodes very well for his prospects for rehabilitation. As important, he is motived to attend and looks forward to engaging in the BOP's SOMP programming to address his conduct and adjust this singular dark aspect of his character. By all accounts he should thrive in SOMP, as well as any other programs, education, or vocational activities that he is allowed to participate in.

Like he has done during his pretrial/sentencing incarceration, Michael plans to use his time in custody to obtain any and all treatment available to him.[2] He would also like to further his education or pursue additional vocational training. Finally, he will work while in custody, not only to keep himself productive, but also as a means of giving back or being a positive influence and contributor to the system he is confined to, rather than a further detriment. He has already done so, as evidenced by the letter submitted from Anchorage Correctional Complex Superintendent Arnaldo Hernandez, commending Michael's work as an inmate foreman for DOC's painting crew. In a rare instance of support for an inmate facing sentencing on serious felony charges, the Superintendent was willing to share with the Court his observations that Michael "is respectful, takes direction well, and appears to be dedicated toward producing the best possible result." Mr. Hernandez noted that Mr. Ross was dedicated to improving the living conditions for his fellow prisoners, which is something Michael plans to do for himself first, and then those around him secondarily, during whatever custody period this Court sentences him to. Finally, in addition to completing SOMP while at BOP, Mr. Ross is also hopeful that the services made available to him while on supervised release can provide the structure he needs to again transition into a stable, community-based, successful life upon his release from custody.

---

[2] The defense has submitted, with its support letters, documentation from DOC verifying Michael's successful participation in and completion of over a dozen courses made available to him during his custody period. These represent every program available during his time with DOC.

*United States v. Michael Vernon Ross*
Case No. 3:22-cr-00092-SLG-KFR                                                              Page 4

## III. ARGUMENT & AUTHORITIES

### A. Guideline Analysis

General Guidelines Argument:

The parties agree that the guideline calculations, as set forth in the PSR, provide the technically correct guideline range for the Court to consider as a starting point for sentencing. That noted, the defense would urge the Court to NOT put any significant weight on the guidelines applicable here, nor should the Court follow them. As has been long noted by the Sentencing Commission and reviewed and argued before this Court in numerous past cases involving the pornography guidelines, the fault in the guidelines in a case such as this, and in most pornography cases, lies not in the fact that several specific offense characteristics apply to increase the guideline calculation, the problem is that these "specific" offense characteristics apply to Ross and almost everyone else charged with possession, production, receipt or distribution of child pornography. The United States Sentencing Commission acknowledged this reality in its 2012 report, Federal Child Pornography Offenses (hereinafter 2012 Report). This voluminous report (468 pages) details the archaic nature and present inadequacy of the guidelines in providing meaningful distinctions among child pornography offenders.

This Court should adopt a position contrary to the guidelines, as it has in the past, and reject a sentence within the guideline range in this case. A more reliable and instructive measure of an appropriate sentence can be found in consideration of the Judiciary Sentencing Information applicable to this case and detailing sentences for similar cases and

offenders.  As the Probation officer notes, during the last five fiscal years (FY2018-2022), there were 155 defendants whose primary guideline was §2G2.1, with a Final Offense Level of 42 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 155 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 291 month(s) and the median length of imprisonment imposed was 300 month(s).

Here, the Court should order a sentence of 300 months, followed by another 300 months of supervised release.  The Probation officer's recommendation is higher than the average length of imprisonment and is justified by an argument that this data does not take into account the length of time during which the abuse in this case occurred.  First, there is no evidence to support that justification.  Indeed, many of the comparable sentences may well have involved cases in which offense conduct occurred for a period of years.  Without individual analysis, which probation did not conduct, it is impossible to make such a claim. Regardless, what is actually accurate, is that the cited data does not take into account Mr. Ross' otherwise exemplary life, as demonstrated by his history and characteristics.  Save for his offense conduct, neither probation nor the government can cite to any aspect of Michael Ross' life that was not honorable, productive, law-abiding, and good.

Michael Ross should not be defined by his crime nor sentenced based on some isolated consideration of just that conduct.  His whole life, history and past behavior matters and should be informative to the Court.  Under a totality of considerations driven by the entirety of the § 3553(a) factors, the Court should conclude that a sentence at the

median of sentences imposed for similar conduct across the nation over the last five years is appropriate in this case and for this particular individual.

### B. A Sentence Sufficient but not Greater Than Necessary – § 3553(a)

Because every sentence must be tailored to fit the individual defendant and individual offense, it only makes sense that certain sentences will call for different levels of punishment and different types of consequences despite being derived from the same root offense. That is the case here.

Michael Ross has been known to those familiar with him as a passive, kind, hardworking man. He was raised in a good family. He is a Military Academy (high school) graduate and has worked regularly and consistently since his high school years. He has children who are owed his support, and a family that still loves and supports him. He has never abused alcohol or controlled substances and these offenses make up the entirety of his criminal history.

Ross' reputation among those who know him is described above and in the materials submitted to the Court. He is a non-violent man. He is compassionate and helpful. He is extremely remorseful for his actions. As noted in his letter to the Court and shown by the other materials provided, Ross has used his time in custody thus far to seriously reflect on his behavior and attempt to begin to identify the source and cause of his condition and behavior. He has sought out information and wants counseling to try and begin to understand the effects on and empathize with the victim of his offenses. He has taken virtually every class available to him at Anchorage Correctional Center to try and better

himself. Prior to his arrest and incarceration, Ross had never received any form of treatment or counseling for a condition he knew he now knows lead to his offense and one which he was unable to control. He experienced actual relief with law enforcement's intervention and very much desires to get sex offender treatment. He is committed to entering the SOMP program and spending whatever period of time allowed during his custody sentence seeking treatment and vocational retraining. Ross has the ability to be rehabilitated through treatment while in custody and to succeed and thrive upon his eventual release.

Section 3553(a)(2)(A) requires "just punishment." Certainly, a sentence of **25 years** in federal prison, followed by 25 more years of supervision would qualify as significant and meaningful punishment. This is particularly true for someone who is an untreated, first-time offender who has never received the chance at rehabilitation. His time in prison will be more difficult than most and as a convicted sex offender his physical safety will be a constant concern throughout service of his sentence.

Additionally, in cases such as this, Ross' punishment and consequences will not end upon release from jail. As a convicted sex offender, he will be forced to register for the rest of his life with law enforcement, which will further restrict where he can live and work forever. Also, his felony conviction, a first for him, will result in further collateral consequences stripping him of basic civil rights.

Section 3553(a)(2)(B) requires the court to consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct." Empirical research from

across the country shows no relationship between sentence length and deterrence; thus, deterrence provides no real basis for a sentence of any significant length. There is simply no evidence that increases in sentence length reduce crime through deterrence. Nonetheless, a sentence of 25 years will undoubtedly send a message to Mr. Ross and all others within the community who know of it, that his offense was serious and will not be tolerated by the Courts.

Section 3553(a)(2)(C) requires the court to consider "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." This purpose of sentencing has to do with both the risk of recidivism and the nature of the defendant's prior crimes, if any. It "is particularly important for those offenders whose criminal histories show repeated serious violations of the law." S. Rep. No. 98-225 at 76 (1983). It is not so important for those offenders who have little risk of recidivism, whose prior offenses are minor or not dangerous, or who have a strong potential for rehabilitation, perhaps through appropriate treatment they have never received.

Here, the government attempts to argue that despite all statistical data to the contrary, there is little hope for Ross' rehabilitation and that he is likely to reoffend simply because he is a sex offender. This argument is not supportable, by research, caselaw, or Ross' own history. Michael Ross is a first-time offender, has non-violent characteristics, and has never received sex offender treatment. A 25-year sentence during which he will receive years of specialized sex offender treatment, educational, vocational, and other rehabilitative services while isolated completely from the community, followed by

supervision for essentially the remainder of his life, during which he will receive additional offense-specific treatment, monitoring and be required to register at all times, is more than sufficient to provide adequate community protection.

Section 3553(a)(2)(D) requires the Court to consider "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." When considering this need, the Court must be mindful of 18 U.S.C. § 3582 which indicates that "imprisonment is not an appropriate means of promoting correction and rehabilitation." Although the government would likely have the Court ignore this factor, it is undisputed that Ross has never received mental health or sex offender treatment of any kind. However, he is educated, hardworking and motivated to receive treatment and rehabilitate himself to the fullest extent possible.

Next, given the Supreme Court's decision in *Gall v. United States*, 552 U.S. 38 (2007), the kinds of sentences available to the Court are limited by only the statutory minimums and maximums. The Court is not bound to follow the guidelines.

Ross' advisory guideline range is higher than the statutory maximum so it defaults to 600 months, the maximum consecutive sentence for each offense. For the reasons stated herein, the guideline applicable to this case is hopelessly flawed and although properly calculated, should simply be rejected by the Court as unhelpful in this particular case.

Next, a sentence of 25 years custody as requested above would not create any unwarranted sentence disparity in this case. The JSIN data noted by the Probation Officer

and herein above make clear that 64% of similarly situated defendants with guidelines and criminal histories like Mr. Ross received sentences of 300 months or less during the last five years from courts across the country.  If this Court were to provide the sentence Ross requests, 25 years (300 months) it would fall directly in line with the average of other similar cases nationwide for defendants with no prior criminal history, much less any instances of prior sexual misconduct.  A sentence of 25 years, one half the statutory combined maximum, would be appropriate and not create disparity in relation to others convicted of similar offenses.

Finally, restitution and a substantial victim's assistance assessment has been requested.  The longer Mr. Ross is incarcerated, the more difficult it will be for him to pay meaningful restitution and the longer the victim will have to wait for compensation of any kind. Thus, this factor, to the extent the Court considers it, mitigates for a shorter, rather than a longer period of custody.

### C. Other Variance Considerations

The Court can and should consider several other circumstances, in conjunction with the § 3353(a) factors, to provide a slight downward variance from the low end of the guideline range, 360 months, down to the requested sentence of 300 months.  In addition to those reason cited above, the Court should consider that Mr. Ross has spent over a year in DOC custody without access to substantial programming or any offense related treatment.  Conditions in the Alaska State correctional system are much more difficult than what he will experience in BOP.

*United States v. Michael Vernon Ross*
Case No. 3:22-cr-00092-SLG-KFR                                                                    Page 11

Next, because of the classification of his crimes, Mr. Ross will be ineligible for First Step Act credits or reductions in time despite any efforts he puts towards his own rehabilitation. Regardless, he is committed to doing all of the programming, beginning with SOMP, that is available to him. Nevertheless, the Court should recognize that the time he served under a sentence will in actuality be longer than the same sentence for the majority of programming defendants sentenced to the same time, simply because of the nature of his offense.

Third, as noted above, Mr. Ross will be more subject to abuse and endangered in prison than any other class of offenders. As such, navigating the BOP system, his various housing, programming and transfer facilities will be extra difficult for him and different from any other class of defendants.

Finally, Mr. Ross' post-offense rehabilitation and acceptance of responsibility has been as great as possible given the limited amount of control he has to access to treatment and programming. He was first charged by the State of Alaska with a series of offenses related solely to the offenses charged in this case. He was released on bond in the State case and successfully abided by the terms and conditions of his release for almost a year prior to being indicted here. He worked, supported his children, followed the court's conditions, and remained completely law abiding. This period of post offense conduct should be considered by this Court as a preview of what should be expected from Mr. Ross following completion of treatment and an extended term of custody. There is every reason

to believe he will again get out of prison, continue to rehabilitate, and conform to a fully law-abiding life.

### D. Concurrent Sentence

As noted in paragraph 44 of the PSR, Mr. Ross remains charged with various State offenses in Case: 3AN-21-06589CR for conduct arising solely out of the circumstances charged herein. As such, this Court should order its sentence to be concurrent to any future sentence imposed in that case by the State of Alaska, pursuant to U.S.S.G. § 5G1.3(b)(2).

## IV. CONCLUSION

For all the reasons set forth herein, the Court should sentence Michael Ross to 300 months custody followed by 300 months of supervised release. A sentence of this nature takes into account the totality of Mr. Ross' history, characteristics, offense conduct, likelihood of rehabilitation, acceptance of responsibility, remorse, and the remaining factors identified by 18 U.S.C. 3553(a) while still providing a sentence that is sufficient *but no greater than necessary* under the circumstances of this case.

DATED at Anchorage, Alaska this 12th day of January, 2024.

Respectfully submitted,
FEDERAL PUBLIC DEFENDER
DISTRICT OF ALASKA

*/s/ Gary G. Colbath*
Gary G. Colbath
Assistant Federal Defender

<u>Certificate of Service</u>:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on January 12, 2024. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.

*/s/ Gary G. Colbath*

Case 3:22-cr-00092-SLG-KFR     Document 57     Filed 01/12/24     Page 14 of 14